IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THELMA ABBOTT, ) <br> ) <br> Plaintiff, ) <br> ) Civil Action No.: 1:10-cv-00462 <br> vs. ) <br> ) **MEMORANDUM OF LAW** <br> WATSON LABORATORIES, INC., and ) **IN SUPPORT OF DEFENDANTS'** <br> WATSON PHARMA, INC. ) **SUPPLEMENTAL MOTION TO** <br> ) **DISMISS** <br> Defendants. ) <br> ) <br> _____) | |

Defendants, Watson Laboratories, Inc. and Watson Pharma, Inc. (hereinafter "Watson"), by and through its counsel, Blank Rome and Cozen O'Connor, submit this Memorandum of Law in Support of Defendants' Supplemental Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.3(a). Watson incorporates by reference, as though fully set forth at length, its Memorandum of Law in Support of its Partial Motion to Dismiss.

I.     **INTRODUCTION**

This product liability case arises from Ms. Abbott's claim that she was prescribed the drug Allopurinol and subsequently developed an adverse side effect, Stevens Johnson Syndrome (SJS) and/or Severe Adverse Cutaneous Reaction (SCAR). Allopurinol is the generic version of the drug Zyloprim, manufactured by Prometheus Labs, for which the FDA first granted approval in 1966. Thereafter, Watson obtained approval of the FDA to market the generic form, Allopurinol, in 1984. Although Watson matched the labeling used by Prometheus Labs for Zyloprim and identified SJS as an adverse side effect in its warnings, Ms. Abbott claims that Watson did not specifically state that African Americans (such as Ms. Abbott) may be more vulnerable to this side effect than other populations.

Despite her numerous causes of action, Ms. Abbott's Amended Complaint amounts to nothing more than a simple failure to warn case against a generic drug manufacturer. On July 26, 2010, Watson filed a Partial Motion to Dismiss requesting that the Court dismiss Count 1, Count 4, Counts 6-9, and Counts 11-12 of Plaintiff's Amended Complaint. Watson's Partial Motion to Dismiss sought to narrow Ms. Abbott's case to her one potentially viable cause of action: a pharmaceutical, product liability failure to warn claim. However, as discussed in detail below, the Supreme Court's recent decision in *Pliva, Inc. et al. v. Mensing*, No. 09-993, slip op., (U.S. June 23, 2011), holds that claims like Ms. Abbott's are preempted by the Hatch-Waxman Amendments to the Food, Drug and Cosmetic Act (FDCA). Accordingly, Watson respectfully requests by way of this Supplemental Motion to Dismiss that the Court dismiss each and every remaining count set forth in Ms. Abbott's Amended Complaint with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff Thelma Abbott alleges that she is an African American and a resident of Guilford County. She seeks to recover "all damages allowable by law for personal injuries she suffered as a result of ingestion of a generic pharmaceutical drug, Allopurinol," manufactured by defendant Watson Laboratories, Inc. (Am. Compl. ¶ 2.) Allopurinol is a generic version of Zyloprim, for which Prometheus Labs holds the original New Drug Application ("NDA").[1] (See, Orange Book Listing for Allopurinol, printed from the FDA's website, Exhibit "A".)

---

[1] In reviewing the dismissal of a complaint under Rule 12(b)(6), a court may properly take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include published reports of administrative bodies. *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003). Pursuant to FDA regulations a brand name drug and all products classified as therapeutically equivalent must be listed in the FDA's "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly referred to as the "Orange Book." 21 U.S.C. § 355(j)(7). Watson respectfully requests that the Court take judicial notice of the FDA's Orange Book listing of

Ms. Abbott alleges that on April 9, 2007, her physician prescribed Allopurinol to treat her gout. Ms. Abbott filled the prescription, consumed the drug, and, on May 14, 2007, she allegedly developed a skin rash and other symptoms. Ms. Abbott contends that on May 18, 2007, she was diagnosed with SJS/TENS due to ingestion of Allopurinol. (Am. Compl. ¶¶ 30-33.)

Ms. Abbott alleges that the package insert accompanying her prescription of Allopurinol did not fully, truthfully and accurately communicate the risks of Allopurinol. She claims that Watson's package insert minimized the risk of severe cutaneous reactions despite available literature stating a higher risk for such reactions, which Watson should have found and reported. (Am. Compl. ¶ 37.) Ms. Abbott contends that various medical literature spanning from 2003 to 2009 (the latter of which is two years after her use in 2007) "discussed the need" to account for the pharmacogenetic relationship between drugs and persons with specific alleles and/or polymorphisms. (Am. Compl. ¶ 39-42.) The crux of Ms. Abbott's case, however, is her contention that although the package insert warned of severe cutaneous reactions, the label did not warn or advise her about the alleged predisposition of African Americans to SJS/TENS from the use of Allopurinol. (Am. Compl. ¶¶ 43, 45, 48.)

In essence, all of Ms. Abbott's causes of action derive from her failure to warn claim -- that Watson failed to warn or advise her about an alleged increased risk of certain side effects among African Americans.

---

Allopurinol as a generic version of Zyloprim, as this information is not subject to reasonable dispute and is capable of accurate and ready determination. *See In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F.Supp.2d at 754 n.2 (noting that "matters of public record may also be considered without converting the motion to dismiss into a motion for summary judgment," and taking judicial notice of "the FDA's Center for Drug Evaluation and Research Listing of New & Generic Drug Approvals 1998-2003 and its listing of bupropion hydrochloride" available on the agency's website).

### III.   ARGUMENT

#### A.   Legal Standard On Motion To Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint but does not resolve contests surrounding the facts, the merits of a claim or applicable defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828, 114 S. Ct. 93 (1993). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling her to relief, i.e., the "plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (finding no plausible claim for relief). In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. *See, e.g., Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

However, the court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *E. Short Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The Court also should not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). In addition, the presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001).

### B. Ms. Abbott's Claims are Preempted by the FDCA

#### 1. North Carolina Tort Law – Failure to Warn

Pursuant to North Carolina's general products liability statute N.C. Gen. Stat. § 99B-5, a plaintiff alleging inadequate warning or instruction must prove that (1) the manufacturer or seller acted unreasonably in failing to provide such warning or instruction; (2) the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought; and (3) (a) the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew or should have known, posed a substantial risk of harm to a reasonably foreseeable claimant; or (b) the manufacturer or seller became aware of the risk and failed to take reasonable steps to give adequate warning or instruction or to take reasonable action under the circumstances. *Thorpe v. Davol, Inc.*, 2011 U.S. Dist. LEXIS 11836, 107-108 (D.R.I. Feb. 4, 2011) (citing N.C. Gen. Stat. § 99B-5(a)).

Pursuant to North Carolina law, a manufacturer must "provide warnings of any dangers associated with the product's use 'sufficiently intelligible and prominent to reach and protect all those who may reasonably be expected to come into contact with [the product].'" *Id. (citing Nicholson v. American Safety Utility Corp.*, 124 N.C. App. 59, 65, 476 S.E.2d 672, 676 (1996)). A plaintiff's failure to provide evidence that lack of adequate warning or instruction was the proximate cause of his injury is fatal to his claim. *Id. (citing Evans v. Evans*, 153 N.C. App. 54, 59 569 S.E.2d 303, 306-307 (2002)).

Here, Ms. Abbott has plead that Watson knew or should have known that African Americans are more likely to carry the HLA-B5801 allele, and that placed them at greater risk to develop Stevens Johnson Syndrome when taking Allopurinol. Ms. Abbott also alleged that Watson knew or should have known that its Allopurinol label did not adequately warn of that

5

risk. Under North Carolina law, then, Ms. Abbott contends that Watson had a duty to provide a different, safer warning.

## 2. Federal Law – Generic Duty to Label Its Product

In 1984, Congress passed the Drug Price Competition and Patent Term Restoration Act, 98 Stat. 1585, commonly call the Hatch-Waxman Amendments to the Food, Drug and Cosmetic Act. Under this law, "generic drugs" can gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA. *Mensing*, slip op. at 5, 6 (citing 21 U.S.C. §355(j)(2)(A)). A generic drug application must also "show that the [safety and efficacy] labeling proposed . . . is the same as the labeling approved for the [brand-name] drug." §355(j)(2)(A)(v). The generic drug's labeling must be the same as the listed drug labeling because the listed drug product is the basis for the generic drug approval. Therefore, the generic drug manufacturer has an ongoing federal duty of "sameness." *Mensing*, slip op. at 6 (internal citations omitted).

When viewed from the perspective of the relationship between Zyloprim and Allopurinol, this regulatory scheme makes perfect sense. There are ten generic manufacturers of Allopurinol. (See, Orange Book Listing for Allopurinol, printed from the FDA's website, Exhibit "A".) Imposing a duty of "sameness" allows the FDA to more easily and efficiently carry out its administrative and enforcement responsibilities. As such, under federal law, none of the ten manufacturers of Allopurinol, including Watson, was permitted to unilaterally change the Allopurinol label.

### a) The CBE Process Was Not Available to Watson to Unilaterally Strengthen the Warnings on Its Label

Watson anticipates that Ms. Abbott will contend that the FDA's "changes-being-effected" (CBE) process allowed it to change its labels when necessary. The CBE process

6

permits drug manufacturers to "add or strengthen a contraindication, warning, [or] precaution," 21 CFR §314.70(c)(6)(iii)(A) (2006), or to "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product," §314.70(c)(6)(iii)(C). When making labeling changes using the CBE process, drug manufacturers need not wait for preapproval by the FDA, which ordinarily is necessary to change a label. *Wyeth v. Levine*, 555 U.S. 555, 568 (2009). They need only simultaneously file a supplemental application with the FDA. 21 CFR §314.70(c)(6).

Watson could not have used the CBE process to unilaterally strengthen their warning labels. *Mensing*, slip op. at 7-8. The CBE regulation allows changes to generic drug labels only when a generic drug manufacturer changes its label to match an updated brand-name label or to follow the FDA's instructions. *Id.* (internal citations omitted.) A generic drug manufacturer, like Watson, cannot use CBE regulations to unilaterally strengthen its warning label because to do so would violate the statutes and regulations requiring a generic drug's label to match its brand-name counterpart's. *Id.* (internal citations omitted.); *see also* 21 U.S.C. §355(j)(4)(G); 21 CFR §§314.94(a)(8)(iii), 314.150(b)(10) (approval may be withdrawn if the generic drug's label "is no longer consistent with that for [the brand-name]"). Consequently, the CBE process was not open to Watson for the sort of change that Ms. Abbott may contend was required by North Carolina law.

### b) The "Dear Doctor" Letter Was Not Available to Watson to Unilaterally Strengthen the Warnings on Its Label

Watson also anticipates that Ms. Abbott will contend that Watson could have used "Dear Doctor" letters to send additional warnings to prescribing physicians and other healthcare professionals. Dear Doctor letters, however, qualify as "labeling." *See* 21 U.S.C. §321(m); 21 CFR §202.1(2). Thus, any such letters must be "consistent with and not contrary to [the drug's]

7

approved . . . labeling." 21 CFR §201.100(d)(1). A "Dear Doctor" letter that contained substantial new warning information would not be consistent with the drug's approved labeling. *Mensing*, slip op. at 8. Additionally, if Watson, but not Prometheus Labs, sent such letters, that would inaccurately imply a therapeutic difference between Zyloprim and Allopurinol and thus could be impermissibly "misleading." *Id*., *see also* 21 CFR §314.150(b)(3) (FDA may withdraw approval of a generic drug if "the labeling of the drug . . . is false or misleading in any particular"). As such, federal law did not permit Watson to issue additional warnings through Dear Doctor letters.

### c) Fulfilling its Alleged Federal Duty to Propose a Stronger Warning Label Does Not Relieve Watson Of Liability Under North Carolina Law

Finally, Watson anticipates that Ms. Abbott may contend that Watson was required to propose stronger warning labels to the FDA if Watson believed such warnings were needed. Typically, in a case like this, a plaintiff will argue that if the FDA had agreed that a label change was necessary, the FDA would have worked with Prometheus Labs, the brand-name manufacturer, to create a new label for both Zyloprim and Allopurinol. Even if such a duty did exist, Watson would not have been able to comply with North Carolina law because Watson could not, on its own, modify the label for Allopurinol. Watson required the cooperation and consent of both the FDA and Prometheus Labs before it could implement any changes to the Allopurinol label.

### 3. Conflict Between North Carolina State Law and the FDCA Preempts Ms. Abbott's Claims

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Where state and federal law "directly conflict," state law must give

8

Case 1:10-cv-00462-NCT -PTS   Document 34   Filed 07/07/11   Page 8 of 12

way. *Wyeth,* 555 U.S. at 583 (Thomas, J., concurring in judgment); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute"). The Supreme Court has held that state and federal law conflict where it is "impossible for a private party to comply with both state and federal requirements." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotation marks omitted).

In this case, as in *Mensing*, it was impossible for Watson to meet its obligations under Federal law and North Carolina tort law. Taking Ms. Abbott's allegations as true, North Carolina law imposed on Watson a duty to attach a safer label to its generic Allopurinol. Federal law, however, demanded that the Allopurinol label be the same at all times as the Zyloprim label. *See, e.g.*, 21 CFR §314.150(b)(10). Thus, it was impossible for Watson to comply with both its state-law duty to change the label and its federal law duty to keep the label the same. Were Watson to independently change the Allopurinol label to satisfy its duty under North Carolina law, it would have violated federal law.

The federal duty to ask the FDA for help in strengthening the corresponding brand-name label, assuming such a duty exists, does not change this analysis. Although requesting FDA assistance would have satisfied Watson's federal duty, it would not have satisfied its state tort-law duty to provide adequate labeling. North Carolina law demands a safe label; it does not instruct Watson to communicate with the FDA about the possibility of a safer label. Although Ms. Abbott's state-law claims do not turn on whether Watson asked the FDA for assistance in changing its Allopurinol label, Watson's federal affirmative defense of pre-emption does. It is true that if Watson had asked the FDA for help in changing the Zyloprim label, Watson might eventually have been able to accomplish under federal law what North Carolina law requires. *If*

9

Watson had asked for FDA assistance, and *if* the FDA decided there was sufficient supporting information, and *if* the FDA undertook negotiations with Prometheus Labs, and *if* adequate label changes were decided on and implemented, then Watson would have started a process that may have eventually led to a better label on generic Allopurinol. Federal law does not dictate the text of each generic drug's label, but rather ties those labels to their brand-name counterparts. Thus, federal law would permit Watson to comply with the North Carolina labeling requirements if, and only if, the FDA and Prometheus Labs changed the Zyloprim label.

The question for "impossibility" is whether the private party could independently do under federal law what state law requires of it. See *Wyeth*, 555 U. S. at 573 (finding no pre-emption where the defendant could "unilaterally" do what state law required). When the "ordinary meaning" of federal law blocks a private party from independently accomplishing what state law requires, that party has established pre-emption. *Mensing*, slip op. at 17. Before Watson could satisfy North Carolina law, the FDA—a federal agency—had to undertake special effort permitting it to do so. Watson could not satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency. *Id*. Watson could not independently satisfy its state duties for preemption purposes.

Here, North Carolina law imposed a duty on Watson to take a certain action, and federal law barred it from taking that action. The only action Watson could independently take—asking for the FDA's help—is not a matter of state-law concern. As such, Ms. Abbott's claims are pre-empted.

## IV.     CONCLUSION

For all of the foregoing reasons and for those reasons set forth in Watson's Memorandum of Law in Support of its Partial Motion to Dismiss, Watson respectfully submits that Ms. Abbott failed to state a claim upon which relief can be granted and the Court should dismiss her Amended Complaint in its entirety with prejudice.

This the 7th day of July, 2011.

        COZEN O'CONNOR

By:     *s/ Kimberly Sullivan*
        Kimberly Sullivan, Esquire
        NC State Bar No.: 23480
        One Wachovia Center, Suite 2100
        301 South College Street
        Charlotte, NC 28202
        Telephone: (704) 376-3400
        ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendants' Memorandum of Law in Support of its Supplemental Motion to Dismiss** was electronically filed using the Court's CM/ECF system this 7th day of July, 2011. The court's Electronic Filing System will automatically e-mail a date-stamped copy to all counsel of record. Counsel may also access the court's Electronic Filing System to download a copy.

                                                                 *s/ Kimberly Sullivan*
                                                                 Kimberly Sullivan

CHARLOTTE\301362\1  272154.000

12

Case 1:10-cv-00462-NCT -PTS   Document 34   Filed 07/07/11   Page 12 of 12